UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ASi INDUSTRIES GmbH, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MEMC ELECTRONIC )<br>MATERIALS, INC., et al., )<br>)<br>Defendants. ) | Case No. 4:06CV951 CDP |

## **MEMORANDUM AND ORDER**

At the hearing on February 6, 2008, I ruled on a number of the parties' dispositive motions. Remaining before me are two motions for summary judgment addressed to plaintiff's contract claims. Plaintiff seeks summary judgment on four affirmative defenses (statute of limitations, force majeure, right to allocation, and limitation on damages), all of which arise out of the terms and conditions of defendant's purchase order. Defendant also seeks summary judgment, arguing that plaintiff's contract claims are barred by the statute of limitations provision, or in the alternative, that specific performance is not allowed and plaintiff is bound by the limitation on damages provision. I conclude that neither the statute of limitations nor the force majeure provision bars this claim, so plaintiff is entitled

to summary judgment on those two affirmative defenses. I conclude that genuine disputes of material fact preclude entry of summary judgment on any other basis.

## Discussion

On June 2, 2004, plaintiff ASi sent to defendant MEMC Pasadena[1] a purchase order, requesting 76 metric tons of granular polysilicon, to be delivered four tons per month over 19 months, at a cost of $30 per kilogram. Plaintiff's purchase order contained no other material terms. On June 4, 2004, MEMC sent the first month's shipment. On June 15, 2004, Sanjeev Lahoti, marketing manager for MEMC, faxed back a copy of ASi's purchase order, with the hand-written notation, "The PO is accepted per the std MEMC Terms & Conditions attached." It is these terms and conditions that form the basis for MEMC's affirmative defenses.

The standards for summary judgment are well settled. In ruling on summary judgment, the Court views the facts and inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby,*

---

[1] The two defendants in this suit are MEMC Electronic Materials, Inc. and its corporate subsidiary, MEMC Pasadena, Inc. The summary judgment motions now before me relate to ASi's dealings with MEMC Pasadena. In this opinion I will refer to MEMC Pasadena generally as "MEMC."

*Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but must set forth by affidavit or other evidence specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). At the summary judgment stage, I will not weigh the evidence and decide the truth of the matter, but rather I need only determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

A. *Statute of Limitations Provision*.

The parties initially dispute whether this term is even part of the contract, but for purposes of this opinion, I will assume that it is. Paragraph 8.7 of MEMC's terms and conditions states:

> Limitation of Actions. No action, regardless of form, arising out of this agreement may be brought by either party more than one year after the cause of action accrues, or in the case of nonpayment, more than one year from the date the last payment was due.

ASi filed suit against MEMC on June 19, 2006. MEMC argues that any claims arising before June 19, 2005 are barred by the one year limitation. MEMC maintains that any claims ASi has asserted must have accrued before June 19, 2005, and perhaps as early as September 2004. ASi counters that even if this limitation provision is part of the contract, the cause of action accrued in October 2005, making the one year limitation inapplicable.

The undisputed facts show that MEMC did not make the regular monthly shipments called for in the purchase order. MEMC sent a full shipment of four tons on June 2, 2004, and a partial shipment of roughly three tons on July 2, 2004. MEMC made no shipments in August or September, and on September 14, 2004, ASi was advised that MEMC did "not expect to have any granular poly to provide you for the balance of this year." This statement not withstanding, MEMC next made a shipment of one ton in November 2004. Following that shipment, ASi did not receive any granular polysilion for eight months, until July 2005, when MEMC sent three tons. This was followed by a shipment of four tons in August 2005. MEMC made no further shipments of granular polysilicon to ASi. Thus in total, of the 19 scheduled shipments, only two full shipments and three partial shipments were ever sent. Ultimately in October 2005, after several months of negotiations and disputes regarding unrelated patent issues, MEMC informed ASi that it was "cancelling" the remaining shipments under the contract.

MEMC argues that plaintiff's breach of contract claim accrued before June 19, 2005. According to MEMC, any contract breach that occurred became actionable once MEMC failed to perform on schedule, which happened when it missed the August 2004 shipment. Moreover, MEMC points to its own continued statements in September 2004 and afterward, telling ASi there would be no polysilicon shipments forthcoming. MEMC argues that these statements put ASi

on notice that MEMC would not be performing, triggering ASi's duty to sue within the one year period. Additionally, in January and March of 2005, ASi sent letters to MEMC accusing the company of "violating and breaking our contract," and being in "continued breach of the parties' supply agreement." MEMC maintains that this is further evidence that ASi could and should have filed suit well before June 2005. MEMC argues that even if the one year limitation period did not begin when ASi was on notice that MEMC would not perform, it began at least by the time ASi accused MEMC of being in breach.

MEMC's agreement to ship 76 metric tons of polysilicon over the course of 19 months in 19 shipments was an installment contract, governed by § 2-612 of the Uniform Commercial Code.[2] Under § 2-612, an installment contract is breached "[w]henever nonconformity or default with respect to one or more installments substantially impairs the value of the whole contract."

The undisputed evidence shows that both parties were working toward a resolution of their differences throughout late 2004 and the first part of 2005. ASi relied on assurances from MEMC that, while no polysilicon would be forthcoming in the near future, MEMC still intended to fulfill its obligations under the purchase order. MEMC repeatedly missed shipments before October 2005, but at no time

---

[2]As adopted in Missouri, Mo. Rev. Stat. 400.2-612. Though it appeared there may have been some questions raised in the parties' briefing, at oral argument both parties agreed that Missouri law governs this case.

during that period did MEMC state unequivocally that no further shipments would be sent or that the agreement was terminated.

Whether there has been a "substantial impairment" of an installment contract is generally a question of fact. *See Bill's Coal Company, Inc. v. Board of Public Utilities of Springfield, Mo.*, 887 F.2d 242, 247 (10th Cir. 1989) (citing cases). However, the case presented here is the reverse of what normally happens on an installment contract breach. Here, it is the defendant, and not the plaintiff, who claims there was a breach "substantially impairing the value of the whole." MEMC, the defendant, claims that the "party aggrieved" (ASi) was actually "aggrieved" more than a year before it brought suit. The text of the Code, however, strongly implies that this sort of reasoning is flawed. Under paragraph three of § 2-612, an aggrieved party "reinstates the contract if he accepts a nonconforming installment without seasonably notifying of cancellation or if he brings an action with respect only to past installments or demands performance as to future installments." Thus, even if ASi was "aggrieved" by MEMC's failure to perform in past months, ASi "reinstated the contract" once it accepted performance in July and August of 2005. That is to say, as long as MEMC was performing or was expressing an intent to perform (and ASi assented), § 2-612 implicitly states that ASi was not an aggrieved party with a right to bring suit. *See N. Am. Lighting, Inc. v. Hopkins Mfg. Corp.*, 37 F.3d 1253, 1258 (7th Cir. 1994)

("Whether the value of the product has been impaired is determined subjectively, from the buyer's perspective.").

MEMC's argument necessarily ignores everything that happened between July and October 2005. During that time, MEMC sent two shipments, fully performing its monthly obligation in August, and sending a partial shipment in July. John Kauffman, a sales and marketing executive with MEMC, confirmed in an e-mail to ASi officials in July 2005 that MEMC intended to deliver the remaining balance of polysilicon under "the original purchase order." It would be anomalous to hold that ASi was required to file suit while MEMC continued to reassure ASi that it intended to perform. MEMC's repeated assurances provided ASi good reason to forestall bringing suit. *See Nuccio v. Nuccio*, 62 F.3d 14, 17 (1st Cir. 1995) ("Estoppel prevents a defendant from asserting the statute of limitations when the defendant has acted to induce the plaintiff to reasonably refrain from commencing timely legal action that the plaintiff otherwise would have taken.").

It was not until a later October 4, 2005 e-mail from Kaufman that MEMC finally told ASi the shipments were being "cancelled." If this communication is to be given any meaning at all, it presupposes that a binding agreement existed at the time the e-mail was sent – otherwise, there would be nothing to "cancel." Because ASi brought suit eight months after the October 2005 e-mail, the claim is within

the statute of limitations, even if I assume that the one year limitation provision is part of the contract.

B.  *Force Majeure Provision*.

MEMC's eleventh affirmative defense raises the force majeure clause of the terms and conditions. Paragraph 6.2 of MEMC's terms and conditions states:

> Force majeure. Seller shall not be liable for any delay or failure to perform due to any cause or condition beyond its reasonable control, whether foreseeable or not, including, without limitation, Acts of God, war, riot, fire, explosion, accident . . . . Seller shall give prompt notice to the Buyer of any such event, and any affected orders shall be suspended for the duration of the delay. Either party may by prior written notice terminate an order if delivery is delayed more than ninety [90] days due to causes covered by this provision.

Again, even if I assume that this provision is part of the contract, ASi is entitled to summary judgment on this defense because there is an absence of evidence supporting it. MEMC admits that it never formally invoked the force majeure clause. After ASi moved for summary judgment on this affirmative defense, MEMC failed to set forth by affidavits or other evidence specific facts relating to the force majeure defense. *See* Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). There is no evidence creating a genuine factual dispute, and summary judgment is appropriate on this defense.

C.  *Remaining Issues of Material Fact*.

The remaining issues raised by the parties' summary judgment motions also arise out of MEMC's terms and conditions. Whether these terms and conditions

are part of the agreement, and how they ought to be interpreted are questions governed by the "battle of the forms" provision of the U.C.C., § 2-207.[3]

Under the statute, additional terms in a written order acknowledgment from one merchant to another will be considered part of the agreement unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) the additional terms materially alter the agreement; or

(c) notification of objection to the additional terms has already been given or is given within a reasonable time after notice of them is received.

U.C.C. § 2-207(2). Here, neither party contends that ASi's purchase order expressly limited acceptance to its stated terms (subsection a), or that ASi objected to the MEMC terms and conditions after they were received (subsection c). The parties dispute whether the terms and conditions materially altered the agreement. I conclude that, at least as to the allotment and damages limitation provisions, genuine issues of material fact preclude summary judgment.

    1.    <u>Allotment Provision</u>.

Paragraph two of the MEMC terms and conditions states, in part:

> Quantity Delivered. . . . If Seller determines that its ability to supply the total demand for the goods is hindered, limited or made impracticable, Seller may allocate its available supply of the goods (without obligation to acquire other supplies of any such goods or material) among itself and its purchasers on such basis as Seller

---

[3]As adopted in Missouri, Mo. Rev. Stat. 400.2-207.

> determines to be equitable without liability for any failure of
> performance which may result therefrom.

ASi argues that this "allotment" provision of MEMC's terms and conditions materially alters the agreement between the parties, and therefore as a matter of law should not be held to be part of the contract.

In looking at whether an additional term to a contract constitutes a material alteration, courts must determine whether the new term will result in surprise or hardship to the affected parties. *Shur-Value Stamps, Inc. v. Phillips Petroleum Co.*, 53 F.3d 592, 599 (8th Cir. 1995). *See also* Mo. Rev. Stat. 400.2-207 cmt. 4 (noting clauses that would materially alter an agreement include those that would result in surprise or hardship if incorporated without express awareness by the other party). Though some "material alteration" issues are legal in nature, others raise questions of fact to be resolved by the circumstances of each particular case. *Shur-Value Stamps*, 50 F.3d at 599; *N & D Fashions, Inc. v. DHJ Industries, Inc.*, 548 F.2d 722, 726 (8th Cir. 1976).

Whether ASi would suffer "surprise or hardship" if the allotment provision were held to be part of the parties' agreement is a disputed factual question. Whether MEMC could allot quantities under the contract is a fundamental issue on which the parties disagree – defendant maintains that it was an understanding between the parties all along, while plaintiff maintains there was no such understanding. This factual dispute must be decided by the jury. Where the

evidence regarding a contract is conflicting or is capable of more than one inference, summary judgment is not appropriate. *Metal Exchange Corporation v. J.W. Terrill, Inc.*, 173 S.W.3d 672, 679 (Mo. Ct. App. 2005).

2.  Limitation on Damages Provision.

Paragraph 6.1 of the MEMC terms and conditions states:

Limitation. Seller's total liability and buyer's exclusive remedy for any and all losses and damages arising out of any cause whatsoever related to this agreement under any theory of contract, tort, strict liability or other legal or equitable theory shall be limited to buyer's actual direct damages not to exceed the purchase price of the goods that caused the damages, or the repair or replacement of such goods. And in no event shall seller be liable for lost profits, special, incidental, consequential, or punitive damages. . . .

As with the allotment provision, the parties dispute whether the limitation provision is a material alteration to the agreement. As the Eighth Circuit has noted, however, courts have consistently held "it is a question of *fact* whether a remedies limitation constitutes a material alteration." *Shur-Value Stamps, Inc. v. Phillips Petroleum Co.*, 50 F.3d 592, 598 (8th Cir. 1995) (citing cases) (emphasis in the original). U.C.C. § 2-719[4] and the accompanying comments are consistent with this position. Under that section, "an agreement may provide for remedies . . . in substitution for those provided [in the U.C.C.] and may limit or alter the measure of damages recoverable." Comment one to this section states that

---

[4] As adopted in Missouri, Mo. Rev. Stat. 400.2-719.

"reasonable agreements limiting or modifying remedies are to be given effect." The word "reasonable," as the Eighth Circuit stated in *Shur-Value Stamps*, is left open to interpretation. "Determining the reasonableness of limitations on remedies requires a distinctly case and fact specific inquiry." *Shur-Value Stamps*, 50 F.3d at 599. Whether the limitation in MEMC's terms and conditions was reasonable, and whether it materially altered the parties' agreement, is a question of fact to be resolved by the jury.

3. Remaining Issues.

Count II of ASi's complaint seeks specific performance in the form of an order directing MEMC to deliver the remaining balance of polysilicon under the contract at the agreed upon price of $30 per kilogram. MEMC has moved for summary judgment on this count, claiming that ASi cannot demonstrate it is entitled to this remedy.

Before the "extraordinary" equitable remedy of specific performance may be ordered, the plaintiff must demonstrate that remedies at law are incomplete and inadequate to accomplish substantial justice. *Lucente v. International Business Machines Corp.*, 310 F.3d 243, 262 (2d Cir. 2002); *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 746 (D.C. Cir. 1995). Specific performance is an equitable remedy awarded by the court, and not triable to a jury. *See Turner v. Burlington Northern R. Co.*, 771 F.2d 341, 342 (8th Cir. 1985). I will therefore wait to decide

whether this equitable remedy should apply until after the jury has determined the factual issues. MEMC's motion for summary judgment on Count II of the complaint will be denied at this time.

Additionally, to the extent that MEMC's summary judgment motion seeks relief on behalf of the corporate parent, MEMC Electronic Materials, based on the MEMC terms and conditions, the motion will be denied. The terms and conditions were attached to an agreement made between ASi and MEMC Pasadena. MEMC Electronic was never a party to the agreement, and cannot avail itself of any of the provisions or limitations in the contract.

Finally, MEMC has moved to limit or bar the testimony of ASi's damages expert witness, Rodney Sowards. Much of the motion relies on the limitation of damages provision, which is still in dispute. Other objections are ones more properly addressed by cross-examination. I will therefore deny this motion as well.

## Conclusion

The undisputed facts of this case show that ASi's cause of action arose on October 4, 2005, when MEMC unambiguously cancelled its remaining shipments of polysilicon under the then-existing contract. Because ASi brought suit within a year of this date, the one year limitation contained in MEMC's terms and conditions does not bar this case, and ASi is entitled to summary judgment on that

defense. Additionally, ASi is entitled to summary judgment on the defense of force majeure, because MEMC has not put forth any evidence to support such a defense. The parties' remaining arguments raise disputes of material fact, and summary judgment is inappropriate on those claims.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for partial summary judgment [#84] is GRANTED in part and DENIED in part. Plaintiff shall have summary judgment on the seventh and eleventh defenses raised in defendants' answer. Plaintiff's motion is denied in all other respects.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment [#95] is DENIED.

**IT IS FURTHER ORDERED** that defendant's motion to exclude or limit testimony of Rodney Sowards [#93] is DENIED.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 13th day of February, 2008.